United States Court of Appeals,

Fifth Circuit.

No. 93-5123.

Roger Dale MILLER, Individually and o/b/o Nick Miller, et al., Plaintiffs-Appellants,

v.

MEDICAL CENTER OF SOUTHWEST LOUISIANA, et al., Defendants-Appellees.

June 14, 1994.

Appeal from the United States District Court for the Western District of Louisiana.

Before JOHNSON, BARKSDALE, and DeMOSS, Circuit Judges.

JOHNSON, Circuit Judge:

Roger Dale Miller and Andrea Miller (Plaintiffs), individually and on behalf of their minor son Nick, brought this action against Hamilton Medical Center, Inc., d/b/a Medical Center of Southwest Louisiana (Hamilton), alleging that Hamilton had refused to treat Nick after an automobile accident in violation of the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd.[1]  The district court, however, found that Nick had never "come to" Hamilton within the meaning of the statute.  Accordingly, the district court granted Hamilton's Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim on which relief could be granted.  Plaintiff appeals and we affirm.

*FACTS AND PROCEDURAL HISTORY*

---

[1]§ 1395dd was enacted as a part of COBRA—the Consolidated Omnibus Budget Reconciliation Act of 1986.  Pub.L. No. 99-272, § 9121, 100 Stat. 82, 164-67 (1986).

1

On March 29, 1992, nine-year-old Nick Miller suffered serious injuries in an automobile accident when his leg became pinned in between two colliding cars. A passerby rushed Nick to nearby Acadia-St. Landry Hospital (Acadia)[2] in Church Point, Louisiana. Once there, Dr. Williams, the general practitioner on duty at Acadia, determined that Nick needed the care of an orthopedist and a surgical facility for debridement of the wound. Unable to provide such treatment, Dr. Williams called Dr. Olivier, an orthopedist at Hamilton some thirty minutes away in Lafayette.

Plaintiffs contend that Dr. Olivier agreed to treat Nick and preparations were made to transport Nick to Hamilton. However, before Nick left Acadia, Plaintiffs allege that an administrator from Hamilton called back and, after determining that Nick had no insurance, instructed Dr. Williams not to send Nick to Hamilton.

Following this, Dr. Williams called several other hospitals seeking to find a facility that could treat Nick. Eventually, Charity Hospital in New Orleans agreed to treat Nick and he was flown there by helicopter. Once at Charity, Nick's leg was immediately surgically debrided. The delay caused by this sequence of events was approximately seven hours and Plaintiffs allege that, on account of this delay, Nick's injuries materially worsened.

On March 22, 1993, Plaintiffs filed suit against Hamilton alleging that Hamilton's refusal to treat Nick was in violation of EMTALA, 42 U.S.C. § 1395dd. Hamilton responded with a motion to

---

[2]This facility is a small, country clinic where only two family doctors practice.

dismiss pursuant to Fed.R.Civ.P. 12(b)(6) arguing that Plaintiffs failed to state a claim on which relief could be granted because they did not allege that Nick "came to" the emergency department at Hamilton.  Further, Hamilton argued that it was a transferee hospital and, as such, it could only be liable under EMTALA if it had agreed to a transfer which it had not.  The district court granted the motion to dismiss, apparently because the court believed that under the facts alleged, Nick never "came to" the emergency department at Hamilton within the meaning of the statute. Plaintiffs now appeal.

1. STANDARD OF REVIEW

In review of a dismissal under Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which relief could be granted, we must accept all well-pleaded facts as true and view them in a light most favorable to the non-movant.  *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992).  "We will not go outside the pleadings and we cannot uphold the dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "  *Rankin v. Wichita Falls,* 762 F.2d 444, 446 (5th Cir.1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 44-45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

2. EMTALA

The sole issue before this Court is whether the plaintiffs have stated a claim under EMTALA, 42 U.S.C. § 1395dd.[3]  This

---

[3]In pertinent part, this statute provides as follows:

(a) Medical screening requirement

statute is also known as the "anti-dumping" statute and it was passed in 1986 in response to a growing concern that hospitals were dumping patients who could not pay by either turning them away from their emergency rooms or transferring them before their emergency conditions were stabilized. *Brooks v. Maryland Gen. Hosp., Inc.,* 996 F.2d 708, 710 (4th Cir.1993). Accordingly, this statute mandates that a hospital[4] must conduct appropriate screening

> In the case of a hospital that has a hospital emergency department, if any individual ... comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition (within the meaning of subsection (e)(1) of this section) exists.
>
> (b) Necessary stabilizing treatment for emergency medical conditions and labor
>
> > (1) In general
> >
> > If any individual (whether or not eligible for benefits under this subchapter) comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either—
> >
> > (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
> >
> > (B) for transfer of the individual to another medical facility in accordance with subsection (c) of this section.

42 U.S.C. § 1395dd.

[4]The hospitals covered by this statute are hospitals with emergency room departments that execute Medicare provider agreements with the federal government pursuant to 42 U.S.C. §

examinations for any individual who presents to its emergency department. Further, if an emergency condition is found to exist, the hospital must either provide sufficient treatment to stabilize the patient or transfer the patient in accordance with the strictures of the statute. *Green v. Touro Infirmary,* 992 F.2d 537, 539 (5th Cir.1993); 42 U.S.C. § 1395dd.

Under the terms of the statute, however, these duties are only triggered when an individual "*comes to* the emergency department *and* a *request is made* on the individual's behalf for examination or treatment...." 42 U.S.C. § 1395dd (emphasis added). These two preconditions are conjunctive requiring both that an individual 1) comes to the emergency department and 2) that a request be made. In the instant case, it is the first requirement that is problematic.

It is undisputed that Nick Miller never physically came to the emergency department at Hamilton. There was only a request over a telephone. Nevertheless, the Plaintiffs argue that we should not construe this statute to require physical presence at the emergency room. Instead, the Plaintiffs contend that Congress intended that the statute would extend the hospital's duty to any individual in need of emergency care who requests treatment at the hospital's emergency department.[5] In essence, the Plaintiffs are

---

1395cc. *Burditt v. U.S. Dept. of Health and Human Services,* 934 F.2d 1362, 1366 (5th Cir.1991). It is undisputed that Hamilton has entered into a Medicare provider agreement.

[5]In support of this argument, the Plaintiffs cite two cases in which a patient came to a hospital, but did not enter the emergency department. *Thornton v. Southwest Detroit Hospital,*

asking this Court to excise the "comes to" clause out of the statute by construing it so as to make it redundant with the "request is made" clause.

We reject this argument for two reasons. First, the language of the statute unambiguously describes the individuals covered by section 1395dd as those who come to the emergency department. *Brooker v. Desert Hospital Corp.,* 947 F.2d 412, 414 (9th Cir.1991); 42 U.S.C. § 1395dd. Except in rare and exceptional circumstances, when " "we find the terms ... unambiguous, judicial inquiry is complete....' " *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 123, 110 S.Ct. 456, 458, 107 L.Ed.2d 438 (1989) (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981). No such exceptional circumstances

---

895 F.2d 1131 (6th Cir.1990); *McIntyre v. Schick,* 795 F.Supp. 777 (E.D.Va.1992). Even though § 1395dd(a) states that a patient must come to the "emergency department," these courts took a broader view of the statutory language and still found EMTALA liability. *Thornton,* 895 F.2d at 1135; *McIntyre,* 795 F.Supp. at 781. The basis for this holding was the belief that the "anti-dumping statute is not based upon the door of the hospital through which a patient enters, but rather upon the notion of proper medical care for those persons suffering medical emergencies, whenever such emergencies occur at a participating hospital." *McIntyre,* 795 F.Supp. at 781.

As these courts did not require physical presence at the emergency department, the Plaintiffs herein argue that we should not require physical presence at Hamilton's emergency department. We do not face the issue that those courts faced and we make no comment on the soundness of those decisions. However, we do note that while the plaintiffs in *Thornton* and *McIntyre* did not enter the emergency department, they did reach the hospital and the emergencies did occur at a participating hospital. This is very different from someone who never came within thirty miles of the building and, in fact, never even began the journey there.

6

exist in this case.[6]

Second, such an interpretation would render the "comes to" clause a nullity. This would be contrary to "the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative...." *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985) (quoting *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979)); *In re Dyke,* 943 F.2d 1435, 1443 (5th Cir.1991). Accordingly, we hold Congress to its words when it said that an individual must "come to" the

---

[6]In rare cases where application of the literal terms of the statute will produce a result that is "demonstrably at odds with the intentions of its drafters," those intentions must be controlling. *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). Such a situation is not present in this case.

The legislative history of EMTALA is replete with general statements about the munificent purpose of its drafters to prevent hospitals with emergency departments from dumping patients who have no insurance. *See* H.R.Rep. No. 241, 99th Cong., 1st Sess. pt. 1, at 27 (1985) U.S.Code Cong. & Admin.News pp. 42, 605; *Gatewood v. Washington Healthcare Corp.,* 933 F.2d 1037, 1039 (D.C.Cir.1991). However, there is nothing in the legislative history that specifically deals with whether, in order to trigger the hospital's duty under EMTALA, an individual must be physically present at the emergency department.

The statute, as written and as we construe it, does serve the drafters' purpose of ensuring that hospitals do not turn away anyone who shows up at the their emergency room doorstep in an emergency condition. The Plaintiffs, however, would have us extend the hospital's duty to require it to accept for emergency treatment any individual who can communicate a request to the emergency department. We see nothing demonstrably at odds with the purpose of the drafters, though, in limiting that duty, in accordance with the unambiguous terms of the statute, to those individuals who come to the emergency department as opposed to any individual who can get to a telephone.

7

emergency department to trigger a hospital's duty under EMTALA.

Moreover, we find support for our conclusion in the case law construing the statute. While this precise issue has seldom been in controversy, most courts have implicitly recognized that the individual must come to the emergency room.[7] Additionally, in devising judicial tests for violation of this statute, courts have most often listed as the first element that the individual come to the emergency department.[8]

---

[7]*See e.g. Green,* 992 F.2d at 537 ("individuals who enter their emergency rooms requesting care"); *Baber v. Hospital Corporation of America,* 977 F.2d 872, 884 (4th Cir.1992); *Collins v. DePaul Hospital,* 963 F.2d 303, 305 (10th Cir.1992) ("if "any individual' comes, or is brought, to such emergency department and requests"); *Burditt,* 934 F.2d at 1366 (Hospitals "must treat all human beings who enter their emergency departments in accordance with [EMTALA]"); *Cleland v. Bronson Health Care Group, Inc.,* 917 F.2d 266, 269 (6th Cir.1990) ("The benefits and rights of the statutes extend "to any individual' who arrives at the hospital"); *Deberry v. Sherman Hospital Ass'n,* 741 F.Supp. 1302, 1305 (N.D.Ill.1990) ("Once it is established that the plaintiff showed up at the hospital's emergency room"); *Owens v. Nacogdoches County Hospital Dist.,* 741 F.Supp. 1269, 1273 (E.D.Tex.1990) ("an emergency room must provide a medical screening examination to any patient who appears complaining of an emergency medical condition").

[8]The usual formulation of the test for a violation of EMTALA labels the elements as follows:

> 1) the individual went to the defendant's emergency room
>
> 2) with an emergency medical condition, and the defendant hospital either
>
> 3) did not adequately screen him to determine whether he had an emergency medical condition, or
>
> 4) discharged him before the emergency condition was stabilized.

*Ruiz v. Kepler,* 832 F.Supp. 1444, 1447 (D.N.M.1993); *Huckaby v. East Ala. Medical Ctr.,* 830 F.Supp. 1399, 1402

Finally, this was the conclusion of the only case to have dealt with this issue directly. *Johnson v. University of Chicago Hosp.,* 982 F.2d 230, 233 (7th Cir.1992). In *Johnson,* the University of Chicago Hospitals (UCH) was operating a telemetry system to direct paramedics transporting emergency patients to the appropriate hospital in the system. During this time, paramedics were dispatched on an emergency call to aid a one-month-old infant who had stopped breathing. On arriving at the scene, the paramedics contacted the telemetry operator from UCH. The paramedics informed the nurse that they were only five blocks from UCH, but the nurse instructed the paramedics to transport the infant to a more distant hospital. *Id.* at 231.

The baby died sometime after arriving at the other hospital and the mother of the child brought suit against UCH for, inter alia, a violation of EMTALA. *Id.* The Seventh Circuit upheld the dismissal of this claim, however, because of its conclusion that, under the plain meaning of the statute, the infant never came to UCH or its emergency department. *Id.* at 233. In explaining its decision, the court stated that the baby "simply never "came to' UCH for medical assistance, and thus never crossed the threshold of [EMTALA] liability." *Id.* at 233 n. 7.

As did the court in *Johnson,* we find that, from the facts alleged in the complaint, Nick Miller never "came to" the emergency department at Hamilton as required by EMTALA. Accordingly, the

---

(M.D.Ala.1993); *Deberry,* 741 F.Supp. at 1305. *See also, Stevison v. Enid Health Systems, Inc.,* 920 F.2d 710, 712 (10th Cir.1990) (setting forth a slightly different test).

Plaintiffs have failed to state a claim on which relief could be granted and the district court correctly granted Hamilton's motion to dismiss under Fed.R.Civ.P. 12(b)(6).[9]

*CONCLUSION*

For the foregoing reasons, the district court's dismissal pursuant to Fed.R.Civ.P. 12(b)(6) is AFFIRMED.

---

[9]As we decide this case on the failure to allege that Nick Miller "came to" the emergency department at Hamilton, we do not address Hamilton's argument that it had no liability as a transferee hospital.