**Maria Marie ARRINGTON, Individually, as Special Administrator of the Estate of Harold E. Arrington, Deceased; as Next Friend of Tisha Maunaala Arrington, a minor; Haroldlind Kealapulani Fitzgerald; Pearl Momilani Arrington; Charlotte Nalani Parks; Lynette Leilani Arrington; Harold Edward Arrington, Jr.; Kelly Arrington; Ardella Aloha Arrington; Eric Anthony Arrington; Derek Bruce Arrington; Michelle Lehua Malufau; Natalie Pulani Lopa; Patricia–Marie Lealoha Arrington and Solomon Samuel Kaluna Arrington, Plaintiffs,**

**v.**

**Norbert B. WONG, M.D.; the Emergency Group, Inc.; the Queen's Medical Center; City and County of Honolulu; Clarence Uyema, Emt; and Jerry Ho, Emt; John Does 1–10; Doe Corporations 1–10; Doe Partnerships 1–10; Doe Non–Profit Organizations 1–10; and Doe Governmental Entities 1–10, Defendants.**

No. 98–00357 DAE.

United States District Court, D. Hawai'i.

Sept. 23, 1998.

Magali Sunderland, Trecker & Fritz, Honolulu, HI, for Harold E. Arrington, Tisha Maunaala Arrington, Haroldlind Kealapulani Fitzgerald, Pearl Momilani Arrington, Charlotte Nalani Parks, Lynnette Leilani Arrington, Harold Edward Arrington, Kelly Arrington, Ardella Aloha Arrington, Eric Anthony Arrington, Derek Bruce Arrington, Michelle Lehua Maliafau, Natalie Pulani Lopa, Patricia–Marie Lealoha Arrington, Solomon Samuel Kaluna Arrington.

Deborah Ann de Quevedo, Char Hamilton Campbell & Thom, Honolulu, HI, for Norbert B. Wong, M.D., Emergency Group, Inc.

William S. Hunt, Alston Hunt Floyd & Ing, Honolulu, HI, for Queen's Medical Center.

Marilyn S.H. Naitoh, Lyons Brandt Cook & Hiramatsu, Honolulu, HI, for City and County of Honolulu, Clarence Uyema, Emt, Jerry Ho, Emt.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT AND DEFENDANT CITY AND COUNTY OF HONOLULU'S MOTION FOR JUDGMENT ON THE PLEADINGS

DAVID ALAN EZRA, District Judge.

The court heard Defendants' Motions on September 21, 1998. Hilary Benson Gangnes, Esq., appeared at the hearing on behalf of Plaintiffs; Deborah A. de Quevedo, Esq., appeared at the hearing on behalf of Defendants Norbert B. Wong, M.D. and The Emergency Group, Inc.; William S. Hunt, Esq., appeared at the hearing on behalf of Defendant The Queen's Medical Center; and

Thomas Cook, Esq., appeared on behalf of Defendants City and County of Honolulu, Clarence Uyema and Jerry Ho. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS Defendants' Motions and DISMISSES Plaintiffs' Complaint and Action.

## BACKGROUND

On May 5, 1996, Harold Arrington was driving to work at approximately 11:30 p.m. when he experienced difficulty breathing. One of his co-workers called an ambulance. When the ambulance arrived, the ambulance personnel noted that Mr. Arrington was "in severe respiratory distress speaking 1–2 words at a time." The ambulance left the scene with Mr. Arrington at 12:24 a.m. and headed to Queen's Medical Center ("Queen's"), the closest medical facility. En route, the ambulance personnel communicated by radio to Queen's and discussed Mr. Arrington's condition with Dr. Wong, an emergency room physician at Queen's. Dr. Wong asked who the patient's doctor was. The ambulance personnel replied that "patient is a Tripler patient, being that he was in severe respiratory distress we thought we'd come to a closer facility." Dr. Wong responded that "if you start on the treatment with the oblasics and the nitro I think it would be okay to go to Tripler." The ambulance then proceeded to Tripler. Tripler is located five miles away from Queen's.

The ambulance arrived at Tripler at 12:40 a.m. The patient coded at 12:42 a.m. Hospital personnel at Tripler attempted unsuccessfully to revive Mr. Arrington. He died at 1:17 a.m.

On May 4, 1998, Plaintiffs filed a claim with the Medical Claim Conciliation Panel, State of Hawaii ("MCCP") for exemption from the MCCP filing requirements. Plaintiffs filed a similar motion before this court on July 2, 1998. A decision from the MCCP is pending resolution of the issue in this court.

Plaintiffs filed this action in the United States District Court for the District of Hawaii on May 4, 1998 against the following Defendants: Dr. Wong; his physicians group, The Emergency Group, Inc.; The Queen's Medical Center; the City and County of Honolulu as operators of the ambulance service; and Clarence Uyema and Jerry Ho, emergency medical technicians attending Mr. Arrington in the ambulance. Plaintiffs assert federal subject matter jurisdiction arising under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, a subsection of the Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. 99–272, 100 Stat. 82 (1986) ("COBRA").

Plaintiffs' First Amended Complaint, filed on May 18, 1998, alleges violation of EMTALA, as well as state law claims for negligence and/or breach of warranty arising from the ambulance transfer of Mr. Arrington on May 5, 1996. Plaintiffs claim to have suffered, among other things, mental distress, loss of consortium, and loss of earnings. Plaintiffs seek general, special, and punitive damages, remedies available under EMTALA, as well as interest, attorney's fees and costs.

Defendants Dr. Wong and The Emergency Group filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. On the same day, June 26, 1998, Defendant The Queen's Medical Center filed a separate Motion to Dismiss under Rule 12(b)(1) based on lack of subject matter jurisdiction. On July 6, 1998, Defendants City and County of Honolulu, Clarence Uyema and Jerry Ho filed a Motion for Judgment on the Pleadings. Because these three motions implicate the same issues, they are treated as one for purposes of this Order.

## STANDARD OF REVIEW

A motion to dismiss will be granted where the plaintiff fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). A complaint should not be dismissed unless it appears to a certainty that plaintiff "would be entitled to no relief under any set of facts that could be proved." *Fidelity Fin. Corp. v. Federal Home Loan Bank,* 792 F.2d 1432, 1435 (9th Cir.1986), *cert. denied,* 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987); *Stender v. Lucky Stores, Inc.,* 766 F.Supp. 830, 831 (N.D.Cal.1991). All allegations of material fact are taken as true and construed

in the light most favorable to the plaintiff. *Stender,* 766 F.Supp. at 831.

Pursuant to a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court may receive among the forms of competent evidence affidavits to resolve any factual dispute. *Biotics Research Corp. v. Heckler,* 710 F.2d 1375, 1379 (9th Cir.1983). The consideration of such evidence does not convert a motion to dismiss into one for summary judgment. *Id.*

Under Rule 12(h)(2) of the Federal Rules of Civil Procedure, "[a] defense of failure to state a claim upon which relief can be granted ... may be made ... by motion for judgment on the pleadings[.]" Judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), is proper when the moving party clearly establishes on the face of the pleadings that it is entitled to prevail. *Doleman v. Meiji Mut. Life Ins. Co.,* 727 F.2d 1480, 1482 (9th Cir.1984). Thus, the movant must show that 1) no material issue of fact remains to be resolved; and 2) it is entitled to judgment as a matter of law. *Id.* In reviewing a motion for judgment on the pleadings, all allegations of fact of the opposing party are accepted by the court as true. *Id.*

## DISCUSSION

### A. *EMTALA Claim*

In 1986, Congress enacted the Emergency Medical Treatment and Active Labor Act, commonly known as the "Patient Anti–Dumping Act," in response to a growing concern about the provision of adequate emergency room medical services to individuals who seek care, particularly as to the indigent and uninsured. H.R.Rep. No. 241, 99th Cong., 1st Sess. (1986), reprinted in 1986 U.S.C.C.A.N. 726–27. "Congress was concerned that hospitals were "dumping" patients who were unable to pay, by either refusing to provide emergency medical treatment or transferring patients before their conditions were stabilized." *Eberhardt v. City of Los Angeles,* 62 F.3d 1253 (9th Cir. 1995).

The two relevant provisions of EMTALA provide the following:

(a) Medical screening requirement. In the case of a hospital that has a hospital emergency department, if any individual ... *comes to the emergency department* and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination within the capability of the hospital's emergency department ... to determine whether or not an emergency medical condition ... exists.

(b) Necessary stabilizing treatment for emergency medical conditions and labor.

(1) In general. If any individual ... *comes to a hospital* and the hospital determines that the individual has an emergency medical condition, the hospital must provide either-

(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or

(B) for transfer of the individual to another medical facility in accordance with subsection (c)

42 U.S.C. § 1395dd.

■ To overcome a motion to dismiss under EMTALA, a plaintiff must allege that: 1) plaintiff went to defendant's emergency room; 2) with an emergency medical condition; and either the hospital 3) did not adequately screen him or her to determine whether he or she had such a condition, or 4) discharged or transferred him or her prior to stabilization of the medical condition. *See Miller v. Medical Center of Southwest Louisiana,* 22 F.3d 626, 630 fn. 8 (5th Cir.1994); *Ruiz v. Kepler,* 832 F.Supp. 1444, 1447 (D.N.M.1993); *Huckaby v. East Ala. Medical Ctr.,* 830 F.Supp. 1399, 1402 (M.D.Ala. 1993).

■ Plaintiffs have failed to meet this standard because it is undisputed that Mr. Arrington never "went to" Queen's emergency room. Plaintiffs argue that the language "comes to a hospital" should not be interpreted to require actual physical presence in the emergency room. Although the Ninth Circuit has not yet addressed this issue, both the Fifth and Seventh Circuits have conclud-

ed that physical presence is required in order to trigger EMTALA liability. In *Johnson v. University of Chicago Hospitals,* 982 F.2d 230 (7th Cir.1992), a mother sued a hospital which operated a telemetry system, directing paramedics transporting patients to the appropriate hospital in the system. The paramedics were instructed to take the daughter to a different, more distant hospital where she subsequently died. The Seventh Circuit upheld the dismissal of the EMTALA claim because of its conclusion that, under the plain meaning of the statute, the child never "came to" the hospital or its emergency department.

Likewise in *Miller v. Medical Center of Southwest Louisiana,* 22 F.3d at 628–29, the Fifth Circuit held that physical presence was required. In *Miller,* as in the instant case, the court found that the patient never physically came to the emergency department. "There was only a request over a telephone. Nevertheless, the Plaintiffs argue that we should not construe this statute to require physical presence at the emergency room. Instead, the Plaintiffs contend that Congress intended that the statute would extend the hospital's duty to any individual in need of emergency care who requests treatment at the hospital's emergency department. In essence, the Plaintiffs are asking this Court to excise the "comes to" clause out of the statute by construing it so as to make it redundant with the "request is made" clause. We reject this argument ...." *Id.* The court cited two reasons for rejecting Plaintiffs' argument. First, the language of the statute unambiguously describes the individuals covered by section 1395dd as those who come to the emergency department. *Id.* Second, such an interpretation would render the "comes to" clause a nullity. *Id.* 22 F.3d at 629.

Plaintiffs urge this court to consider the opinions in *McIntyre v. Schick,* 795 F.Supp. 777 (E.D.Va.1992), and *Thornton v. Southwest Detroit Hospital,* 895 F.2d 1131 (6th Cir.1990). According to Plaintiffs, these two cases held that the language "comes to the emergency room" should not be so narrowly construed. In *McIntyre,* a woman who had no health insurance arrived at the hospital in an alleged state of fetal distress. She was taken to the labor and delivery area rather than admitted through the emergency room. In holding that EMTALA still applied, the court noted that the rationale behind the anti-dumping statute "is not based on the door of the hospital through which a patient enters, but rather upon the notion of proper medical care for those persons suffering medical emergencies, *whenever such emergencies occur at a participating hospital*" (emphasis added). *McIntyre,* 795 F.Supp. at 781. Rather than expand the "comes to the emergency room" language beyond the hospital boundary, the *McIntyre* court merely decided that which door the patient enters through is irrelevant. Nothing in this opinion suggests, however, that a patient need not enter through a hospital door.

In *Thornton,* the patient was taken to the hospital's emergency room and then admitted to the Intensive Care Unit ("ICU"). *Thornton,* 895 F.2d at 1131. Although the patient was scheduled to be admitted into rehabilitation therapy, she was discharged from the hospital when the rehabilitation institute refused to accept her because she had no insurance. *Id.* She alleged that the hospital failed to stabilize her condition before discharging her. *Id.* 895 F.2d at 1132. The Sixth Circuit noted that EMTALA was enacted to revive the long tradition of American hospitals giving emergency aid to "anyone in need who appeared *on the emergency room doorstep.*" *Id.* 895 F.2d at 1132. In *Thornton,* the patient actually came to the emergency room. At this point, EMTALA was triggered. The Sixth Circuit did nothing to alter the starting point of EMTALA liability. Instead, the *Thornton* court held that EMTALA liability did not end simply because the hospital moved the patient from the emergency room to another unit. The court stated, "Although emergency care often occurs, and almost invariably begins, in an emergency room, emergency care does not always stop when a patient is wheeled from the emergency room into the main hospital. Hospitals may not circumvent the requirements of the Act merely by admitting an emergency room patient to the hospital, then immediately discharging the patient." *Thornton,* 895 F.2d at 1135. Again, nothing in the *Thornton* opinion suggests that EMTALA liability begins before the patient arrives at the participating hospital.

This court agrees with the reasoning set forth in the preceding opinions. The plain language of the EMTALA statute clearly requires that a patient must first "come to" the hospital emergency department. Failure to require at least a patient's physical presence at the hospital before EMTALA liability arises would distort the phrase "comes to the emergency department" beyond recognition. If Congress intended that EMTALA liability should attach prior to this point in time, it would not have included this phrase. Since construing the phrase "comes to the emergency department" as requiring physical presence is consistent with both the plain language and the underlying purpose of EMTALA ("rendering emergency aid to anyone in need who appears on the emergency room doorstep"), this court is unwilling to ignore the physical presence requirement.

Finally, Plaintiffs have cited no support and the court has found none for the proposition that "constructive presence" (e.g., in this case, the ambulance's telephone contact with the emergency room physician) would be enough to satisfy the physical presence requirement of EMTALA. In the absence of any such support, the court must reject this argument. If the court were to accept this argument, it would embark down a slippery slope for which there is no logical end. For instance, if an emergency room physician in one location observes, through a video conferencing monitor, a patient physically located hundreds of miles away and for whatever reason refers the patient to another hospital, has the observing physician incurred EMTALA liability on behalf of the hospital? Rather than attempt to distinguish such hypotheticals, the court finds the line must be drawn at "the emergency room doorstep" as Congress intended.

██ Since Mr. Arrington never "came to" Queen's emergency department, Plaintiffs have failed to state a claim for relief under EMTALA. Therefore, the court GRANTS Defendants' Motions and DISMISSES Plaintiffs' Complaint and Action.

### B. *MCCP Exemption*

Because Plaintiffs' Complaint is hereby dismissed, the court makes no determination regarding Plaintiffs' exemption request.

### C. *Supplemental Jurisdiction*

Plaintiffs urge this court to retain supplemental jurisdiction over the state law claims in the event the federal claim is dismissed. Supplemental jurisdiction is governed by 28 U.S.C. § 1367. Section 1367(a) provides that a district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy . . . ." 28 U.S.C. § 1367(a). Under § 1367(c), a court may decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of state law,

(2) the claim substantially predominates over the claims or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)–(4).

██ Pursuant to § 1367(c)(3), the court refuses to exercise supplemental jurisdiction and dismisses Plaintiffs' state law claims because, as noted above, the court has dismissed the only federal claim. Plaintiffs further urge this court not to dismiss the state law claims, but to remand these claims to the state court. Because Plaintiffs filed this action in federal court originally and the action was not removed to this court, the appropriate response is dismissal rather than remand. However, nothing in this Order precludes Plaintiffs from filing their state law claims in state court.

### CONCLUSION

For the reasons stated above, the court GRANTS Defendants' Motions and DISMISSES Plaintiffs' Complaint and Action.

IT IS SO ORDERED.