Alberto **LOAISIGA–CRUZ**, Plaintiff,

v.

**HOSPITAL SAN JUAN BAUTISTA,**
et al., Defendants.

Civil No. 09–2023 (DRD).

United States District Court,
D. Puerto Rico.

Jan. 29, 2010.

131

Alberto Loaisiga–Cruz, Caguas, PR, pro se.

Mirna L. Arroyo–Miranda, Martnez Texidor & Martnez Vivas Law Offices, Ponce, PR, Nanette Alomar–Camacho, Quinones Tridas Law Office, PSC, San Juan, PR, for Hosp. San Juan Bautista.

Frederic Chardon–Dubos, Frederic Chardon Dubos Law Office, Moca, PR, Igor Dominguez–Perez, Igor J. Dominguez Law Office, San Juan, PR, for Julio M. Baez–Suarez.

Ricardo J. Llerandi–Cruz, San Juan, PR, for Eric M. Perez–Carrasquillo.

### AMENDED OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

On October 5, 2009, Plaintiff in the instant action filed his pro se *Complaint*

(Docket No. 2) against Defendants Hospital San Juan Bautista (hereinafter "Defendant Hospital"), and natural persons Julio M. Baez–Suarez, Eric M. Perez–Carrasquillo and Arnoldo Reyes.

In his *Complaint*, Plaintiff states that he was admitted to the emergency room of San Juan Bautista Medical Center following an automobile accident on October 10, 2008. Although Plaintiff broadly alleges that he "was not evaluated, nor were [his] vitals taken" at the hospital, he then states that a CAT scan was performed on him, after which he was diagnosed in Defendant Hospital with a fractured vertebrae. Further, Plaintiff asserts that he remained in the hospital for several days, spending his time in both the emergency room and an inpatient room, Room 45A. During his stay in Room 45A, Plaintiff alleges that he was administered intravenous fluids and that a nurse attempted to insert a catheter, which he subsequently refused. Ultimately, Plaintiff states that his claim is for a "violation of Federal Law (sic) EMTALA" rising from the allegedly negligent acts of various members of the hospital's medical staff.

This Court construes pro se pleadings liberally in favor of the pro se party. *Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8, 15 (1st Cir.1990).[1] "The policy behind affording pro se plaintiffs liberal interpretation is that if they present sufficient facts, the [C]ourt may intuit the correct cause of action, even if it was imperfectly pled." *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir.1997), *cert. denied* 522 U.S. 1148, 118 S.Ct. 1165, 140 L.Ed.2d 176 (1998). In this manner, the Court ensures that pro se pleadings are given a fair and meaningful consideration. *See Eveland v. Dir. of*

*C.I.A.*, 843 F.2d 46, 49 (1st Cir.1988). It is in this light that the Court will analyze Plaintiff's *Complaint* in the instant case.

"Federal Courts are courts of limited jurisdiction." *American Fiber & Finishing, Inc. v. Tyco Healthcare Grp.*, 362 F.3d 136, 138 (1st Cir.2004); *see also Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005). Accordingly, the plaintiff in any action bears the burden of affirmatively alleging and proving jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Thus, in order to bring an action before the Court, the plaintiff must allege that the action involves either federal question or diversity jurisdiction to satisfy the requirement that the Court exercise subject matter jurisdiction over the action. 28 U.S.C. §§ 1331 & 1332. In order to assert that the Court may exercise federal question jurisdiction over an action, the plaintiff's "statement of his own cause of action [must] show[ ] that it is based upon federal law." *Vaden v. Discover Bank*, —— U.S. ——, 129 S.Ct. 1262, 1272, 173 L.Ed.2d 206 (2009) (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S.Ct. 42, 53 L.Ed. 126 (1908))(internal quotations omitted).

Where the Court lacks subject matter jurisdiction, the Court must dismiss the action. FED.R.CIV.P. 12(h)(3) ("Whenever it shall appear ... that the court lacks jurisdiction of the subject matter, the court shall dismiss the action"). Further, "a federal court has an obligation to inquire *sua sponte* into its own subject matter jurisdiction." *McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir.2004).

---

1. This Court is thus excusing pro se Plaintiff from complying with the higher threshold of pleadings established in *Twombly* and *Iqbal*, which requires "plausibility" based upon the facts alleged in the complaint which initiates a civil action. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *see also Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

In 1986, Congress adopted EMTALA to address the problems created by the refusal of hospital emergency rooms to treat patients who did not carry adequate medical insurance. *Reynolds v. MaineGeneral Health*, 218 F.3d 78, 83 (1st Cir.2000). Uninsured patients have a remedy against a hospital pursuant to EMTALA only in certain situations where a state malpractice claim is not available. *Id.; see also* 42 U.S.C. § 1395dd(d)(2)(A). EMTALA includes two key provisions: 1) hospitals must provide appropriate screening to emergency room patients to determine whether an emergency medical condition exists; and 2) hospitals must provide services necessary to stabilize the patient's condition before releasing him/her. *Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1190 (1st Cir.1995). As cited in *Morales v. Sociedad Española de Auxilio Mutuo y Beneficencia*, 524 F.3d 54, 57–58 (1st Cir. 2008) cert. denied —— U.S. ——, 129 S.Ct. 898, 173 L.Ed.2d 107 (2009),

> [f]irst, 'if any individual … comes to the emergency department [of a covered hospital] and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination.' Second, if the screening examination discloses that the individual suffers from an emergency medical condition, the hospital must provide necessary stabilization.

(quoting and citing 42 U.S.C. §§ 1395dd(a) & (b)(1)).

 EMTALA, however, is not a federal malpractice statute. On the contrary, courts have consistently held that "EMTALA does not create a cause of action for federal medical malpractice." *Correa*, 69 F.3d at 1192 (citation omitted); *see also Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1137 (8th Cir.1996) ("[s]o far as we can tell, every court that has considered EMTALA has disclaimed

any notion that it creates a general federal cause of action for medical malpractice in emergency rooms."); *see also Reynolds v. MaineGeneral Health*, 218 F.3d 78, 83–84 (1st Cir.2000) (standing for the proposition that EMTALA was not intended to supplant existing medical malpractice state-law with a federal malpractice standard. The required minimal screening and stabilization were to be solely established to prevent the then-existing policy of patient dumping which the state malpractice could not redress). Further, EMTALA is limited to suits against hospitals, not individual physicians. *See Eberhardt v. City of Los Angeles*, 62 F.3d 1253 (9th Cir.1995); *see also King v. Ahrens*, 16 F.3d 265 (8th Cir.1994); *Baber v. Hosp. Corp. of America*, 977 F.2d 872, 877 (4th Cir.1992).

 EMTALA is therefore the result of Congressional concern about reports that hospital emergency rooms, driven by profit and not public service, were refusing to accept or treat patients that lack medical insurance with emergency medical conditions. *Correa v. Hospital San Francisco*, 69 F.3d 1184, 1189 (citing the legislative history of EMTALA). In order to deter this practice, referred to colloquially by the enacting legislature as "dumping," Congress enacted EMTALA, which "created a remedy for patients in certain contexts in which a claim under state medical malpractice law was not available." *Reynolds*, 218 F.3d at 83. As such, EMTALA complements but in no way displaces or substitutes traditional state-law tort remedies for medical malpractice. *Id.* at 83–84 ("EMTALA is a limited 'anti-dumping' statute, not a federal malpractice statute"; EMTALA is "designed to complement and not incorporate state malpractice law") (citations omitted); *see also Correa*, 69 F.3d at 1192 ("EMTALA does not create a cause of action for medical malpractice.") (citations omitted).

Insofar as it concerns the instant case, EMTALA is comprised of two key requirements imposed on hospitals with emergency rooms: (1) that, once a patient arrives at their doorstep requiring treatment or examination, the emergency room provides a medical screening examination of that patient that is adequate within the particular emergency room's capabilities, and (2) that if an emergency medical condition is determined to exist, the patient be stabilized prior to discharge or transfer to another facility. *Guadalupe v. Negron Agosto*, 299 F.3d 15, 19 (1st Cir.2002) ("[b]y its terms, EMTALA is designed to assure that any person visiting a covered hospital's emergency room is screened for an emergency medical condition and is stabilized if such condition exists"); *Reynolds*, 218 F.3d at 83 ("at a minimum Congress manifested an intent that all patients be treated fairly"). The relevant provisions are 42 U.S.C. § 1395dd(a) and § 1395dd(b). Subsection (a) addresses the screening requirement and provides that:

[I]f any individual ... comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, **the hospital must provide an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition ...** exists.

Subsection (b), in turn, deals with the stabilization requirement and prescribes that:

[I]f any individual ... **comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either-**
(A) **within the staff and facilities available at the hospital, for such fur-**ther **medical examination and such treatment as may be required to stabilize the medical condition,** or
(B) **for transfer of the individual to another medical facility** in accordance with [the statute]. (Emphasis ours).

■ A plaintiff may assert causes of action under either the screening or stabilization provisions of EMTALA, or both. Regardless of the plaintiff's choice as to how to proceed, under one provision, the other, or both, in order to prevail on his EMTALA claim, he must show that:

(1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent treatment facility); (2) the patient arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or

(b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently transferring her) without first stabilizing the emergency medical condition.

*Correa*, 69 F.3d at 1190 (citing *Miller v. Med. Ctr. of S.W. La.*, 22 F.3d 626, 628 (5th Cir.1994)); *see also Stevison v. Enid Health Sys., Inc.*, 920 F.2d 710, 712 (10th Cir.1990).

In his *Complaint*, Plaintiff emphasizes that the only action which he brings against Defendants is one arising under federal question jurisdiction provided by EMTALA. Plaintiff provides no other grounds for subject matter jurisdiction in the instant case. Thus, in order for the Court to entertain jurisdiction over the instant case, it must find that Plaintiff has stated a cause of action under EMTALA. If not, the Court may not exercise jurisdiction over the instant action and must dismiss the action. Accordingly, the Court hereby exercises its obligation to inquire

*sua sponte* into the subject matter jurisdiction of the instant case.

■ As an initial matter, the Court must find that, as EMTALA does not apply to suits against individual physicians or other individual third parties, Plaintiff has not stated a cognizable cause of action arising under federal question jurisdiction supplied by EMTALA against the individually named Defendants. *See Eberhardt v. City of Los Angeles,* 62 F.3d 1253 (9th Cir.1995); *see also King v. Ahrens,* 16 F.3d 265 (8th Cir.1994); *Baber v. Hosp. Corp. of America,* 977 F.2d 872, 877 (4th Cir.1992). Accordingly, Plaintiff's claims against Julio Baez Suarez, Eric Perez Carrasquillo and Arnaldo Reyes must be dismissed. Accordingly, the Court hereby **DISMISSES WITH PREJUDICE** Plaintiff's federal claims against these individual Defendants, but **DISMISSES WITHOUT PREJUDICE** any state claims, such as medical malpractice, which might be potentially implied.

■ Thus, the Court proceeds to address Plaintiff's remaining EMTALA claim against Defendant Hospital. The essence of Plaintiff's claims is not that he was denied a screening that would identify any medical condition arising from his automobile accident once he entered the emergency room. Rather, the Court must find pursuant to allegations in the pro se *Complaint* that Plaintiff only complained of the quality of the treatment which he received, as, by his own admission, he was administered a CAT scan and subsequently diagnosed with a fractured vertebrae while in the emergency room. As the screening provision of EMTALA merely requires that there be some screening, and not that it be administered even in an evenhanded manner, the Court must only satisfy itself

that the hospital provided screening "reasonably calculated to identify [the] critical medical conditions [applicable to the patient]" that underlie Plaintiff's emergency room visit. *See Guadalupe,* 299 F.3d at 20; *see also Correa,* 69 F.3d at 1192.

■ In the instant case, Plaintiff presented himself with injuries sustained in an automobile accident and was subsequently given a CAT scan and diagnosed by a doctor at Defendant Hospital with a fractured bone. Plaintiff does not allege that he suffered any injury in the accident which was not diagnosed or treated by physicians at Defendant Hospital. Accordingly, the Court must find that Plaintiff does not even assert that doctors in the emergency room of Defendant Hospital failed to treat the condition with which he presented himself. Rather, following a series of irrelevant allegations regarding the length of time spent waiting in the emergency room and the confrontational behavior of a fellow patient, Plaintiff only asserts in his *Complaint* that the care provided to him at Defendant Hospital was faulty as he was injected with solutions which were not identified and allegedly injured during the insertion of a catheter. Thus, by his own admission, Plaintiff was examined and diagnosed [2] after entering the emergency room. Accordingly, the Court can not find that Plaintiff has stated a cognizable claim under the screening prong of EMTALA.

■ Likewise, even an extremely liberal reading of the pro se *Complaint* and all allegations contained therein fails to yield a claim under the stabilization provision of EMTALA. To find that Plaintiff stated a claim under the stabilization prong would be to ignore the fact that, after a period of

---

[2]. The Court notes that, even if Plaintiff were to allege that the diagnosis of a fractured vertebrae was incorrect, such a mis-diagnosis would not create a cause of action under EMTALA, but rather, would create a cause of action under the applicable state malpractice law. *See Correa,* 69 F.3d at 1194.

time spent in the emergency room, Plaintiff was assigned a room in the hospital, where, at the very least, he received intravenous fluids and nurses attempted to insert a catheter. As the Code of Federal Regulations clearly states that "[i]f the hospital admits the individual as in inpatient for further treatment, the hospital's obligation" under the stabilization prong is fulfilled, the Court cannot find that Defendant Hospital failed to fulfill its duty under the stabilization prong of EMTALA. 42 C.F.R. § 489.24(a)(1)(ii). Accordingly, Plaintiff has failed to state a colorable EMTALA claim based on the stabilization provision. Thus, the Court must find that Plaintiff has fallen far short of stating a case of "dumping" by Defendant Hospital under either provision of EMTALA.

Therefore, the Court finds that EMTALA does not apply to the facts of the case and that Plaintiff has failed to state a colorable cause of action under that statute. The Court must also find that Plaintiff has attempted to force a square peg into a round hold by filing what is, at best, a state medical malpractice claim under the guise of an EMTALA action, attempting to invoke subject matter jurisdiction with the mere mention of a federal statute which is clearly inapplicable based upon the assertions contained within Plaintiff's pleadings. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n. 10, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) ("[a] claim invoking subject matter jurisdiction under 28 U.S.C. § 1331 ... may be dismissed for want to subject-matter jurisdiction if it is not colorable, i.e. if it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous").

As discussed above, Plaintiff has completely failed to state a colorable cause of action under EMTALA which would grant the Court federal question jurisdiction in the instant case. Rather, Plaintiff appears to have attempted to force federal question jurisdiction upon a set of facts which, at best constitute a potential state malpractice claim by invoking a federal statute which is wholly inapplicable to the factual scenario surrounding his claim. Thus, the Court cannot exercise subject matter jurisdiction over the instant case. Accordingly, the Court hereby exercises its obligation under Federal Rule of Civil Procedure 12(h)(3) to **DISMISS** the instant EMTALA case *sua sponte* and **WITH PREJUDICE.** Any potential state medical malpractice claim or other state law cause of action as to Defendant Hospital is hereby **DISMISSED WITHOUT PREJUDICE.** *See e.g. Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1176 (1st Cir.1995) (finding that supplemental state law claims should only be entertained where a claim invoking federal subject matter jurisdiction exists and the claims arise from a common nucleus of fact).

**IT IS SO ORDERED.**