**Edda CINTRON, et al., Plaintiffs**

v.

**PAVIA HATO REY HOSPITAL, et al, Defendants.**

**Civil No. 05–2077(SEC).**

United States District Court, D. Puerto Rico.

March 27, 2007.

---

Lourdes Martinez–Jimenez, Alvaro R. Calderon, Jr. LLP, San Juan, PR, for Plaintiffs.

Francisco E. Colon–Ramirez, Colon, Colon & Martinez, Jose A. Rivera–Cordero, Rivera Mercado & Rivera Cordero Law Office, Oscar Gonzalez–Badillo, Gonzalez Badillo & De Jesus Martinez Law Office, Miguel G. Laffitte, Delgado & Fernandez, Luis G. Martinez–Llorens, San Juan, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, Senior District Judge.

Plaintiffs, the widow and children of Luis Valentín–Cintrón, who died at Hospital Pavía in Hato Rey after attempting suicide by overdosing on medications, filed suit against Pavía Hospital and other defendants for violations of the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd *et seq*, and medical malpractice. Pending before the Court is Co-defendant Pavía Hato Rey Hospital's (hereinafter Pavía) Motion for Summary Judgment (Docket # 53), wherein it argues that no violation of EMTALA took place. Plaintiffs opposed the motion (see Dockets # # 72–73). After reviewing the filings and the applicable law, for the reasons explained below, the Motion for Summary Judgment will be **GRANTED in part, DENIED in part.**

### Procedural and Factual Background

Unless otherwise noted, all facts set herein are derived from properly supported facts included as part of Co-defendant Pavía's Statement of Facts (Docket # 53–2).[1]

1. As explained below, Local Rule 56 requires that a party opposing a motion for summary judgment deny, admit, or qualify, by reference to the numbered paragraphs in the moving party's statement of facts, each fact included in such statement. The Local Rule also allows the non-moving party to propose additional uncontested facts; however, such additional facts must be set forth in a separate section. Plaintiffs failed to comply with the Local Rule. First, except for Co-defendant Pavía's facts # # 8 and 10, Plaintiffs failed to refer to the numbered paragraphs in Co–Defendant Pavía's Statement of Facts. As such, and with the exception of # # 8 and 10, we deem admitted all facts within Co-defendant Pavía's Statement of Facts that are properly supported. Furthermore, because Plaintiffs

On October 8, 2004, Mr. Luis Valentín–Cintrón, a forty-seven year old psychiatric patient, intentionally overdosed on several medications. Mr. Valentín–Cintrón arrived at the emergency room of Pavía Hospital at approximately 3:00 PM. One hour later, a physical examination was performed and a basic workup, including blood count, basic metabolic panel, urinalysis, and arterial blood gases, was ordered. Per the Emergency Room Record, the attending physician's (Dr. Connelly) diagnosis was suicide attempt.

At 11:10 P.M. of that same day, October 8, 2004, Mr. Valentín–Cintrón was pronounced dead. This lawsuit ensued.

Co-defendant Pavía asserts that while Mr. Valentín–Cintrón was in the emergency room, the required examination was performed. *See,* Docket # 53–2 ¶ 8. For that assertion, it relies on the expert report prepared by Plaintiffs' expert witness, Dr. Joseph Averbach. *See,* Ex. 1 to Docket # 53–8. In that report, Dr. Averbach stated: "The mandatory examination was performed; however, Dr. Connelly failed to initiate appropriate treatment as described in the general management as described above." *Id.* In an attempt to dispute this fact, derived from their own witness's expert report, Plaintiffs point to evidence on the record about the lack of treatment to Mr. Valentín–Cintrón during the time he was in the emergency room. *See,* Docket # 72–1, ¶¶ 5, 7, 9, 13 & 15, and the evidence in support thereof.

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affi-davits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202(1986); *Ramírez Rodríguez v. Boehringer Ingelheim,* 425 F.3d 67, 77 (1st Cir.2005). In reaching such a determination, the Court may not weigh the evidence. *Casas Office Machs., Inc. v. Mita Copystar Am., Inc.,* 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." *Maldonado–Denis v. Castillo–Rodríguez,* 23 F.3d 576, 581 (1st Cir.1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party' and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" *Depoutot v. Raffaelly,* 424 F.3d 112, 116 (1st Cir.2005) (quoting *Garside,* 895 F.2d at 48 (1st Cir. 1990)). By like token, 'material' "means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant." *Rojas–Ithier v. Sociedad Española de Auxilio Mutuo,* 394 F.3d 40, 42–43 (1st Cir.2005) (citations omitted). Therefore,

---

joined their proposed additional uncontested facts with those facts that were asserted in denial of Co-defendant Pavía's proposed uncontested facts, they infringed Local Rule 56. As a result of this non-compliance with the Local Rules, the Court has taken into consideration only the facts that purportedly contest Co-defendant Pavía's proposed uncontested facts.

there is a trial-worthy issue when the "evidence is such that there is a factual controversy pertaining to an issue that may affect the outcome of the litigation under the governing law, and the evidence is sufficiently open-ended to permit a rational fact finder to resolve the issue in favor of either side." *Id.* (citations omitted).

Local Rule 56(b), moreover, requires the moving party to file annexed to the motion "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried." The non-movant has a corresponding obligation to file with its opposition a statement admitting, denying, or qualifying the facts "by reference to each numbered paragraph of the moving party's statement of material facts", supporting each denial or qualification of the movant's material facts with a citation to the record. Local Rule 56(c). If the non-movant fails to properly controvert the movant's statement, all the material facts set forth therein "shall be deemed to be admitted." Local Rule 56(e); *Cosme–Rosado v. Serrano-Rodriguez*, 360 F.3d 42 (1st Cir.2004). This is the so-called "anti-ferret rule." *See*, e.g., *Orbi, S.A. v. Calvesbert & Brown*, 20 F.Supp.2d 289, 291 (D.P.R.1998). While failure to comply with this rule does not automatically warrant the granting of summary judgment, "it launches the nonmovant's case down the road toward an early dismissal." *Tavárez v. Champion Prods., Inc.*, 903 F.Supp. 268, 270 (D.P.R.1995).

The non-movant may also include additional facts with its opposing statement of facts. However, Local Rule 56(c) requires that if additional facts are included with the opposing statement of facts, they be contained "in a **separate section** ... [and] set forth in separate numbered paragraphs and supported by a record citation" (emphasis added). Plaintiffs submitted an opposing statement of facts in which they included, desegregated, additional facts and some facts that properly (per Local Rule 56(c)) controvert two of Co-defendant Pavía's facts. By combining these two sets of facts, which should have been separated into two distinct sections, Plaintiffs ran afoul of Local Rule 56(c). As such, the Court has disregarded Plaintiffs' additional facts. Accordingly, in ruling on the motion for summary judgment, the Court has taken into account **only** those facts which Plaintiffs posit are in opposition to Co-defendant Pavía's proposed uncontested facts. In so doing, the Court has been lenient with Plaintiffs, given that their infringement of Local Rule 56(c) rendered their entire statement non-compliant with the Local Rules.

## Applicable Law and Analysis

As stated above, this is an action for violations to EMTALA. Additionally, medical malpractice claims under Puerto Rico's general tort statute, 31 P.R. Laws Ann. § 5141 are brought pursuant to our supplemental jurisdiction. Co-defendant Pavía has moved for dismissal with prejudice of the EMTALA claim, arguing that Plaintiffs' own expert established that no violation to the statute occurred, and further prays for dismissal without prejudice of the supplemental claims. We begin by outlining the contours of EMTALA.

EMTALA is the result of Congressional concern about reports that hospital emergency rooms, driven by concern for their bottom line, were refusing to accept or treat patients with emergency medical conditions that lacked medical insurance. *See*, *Correa v. Hospital San Francisco*, 69 F.3d 1184, 1189 (1st Cir.1995) (citing the legislative record of EMTALA). In order to counter the evils associated with this practice, Congress enacted EMTALA, which "created a remedy for patients in

certain contexts in which a claim under state medical malpractice law was not available." *Reynolds v. MaineGeneral Health*, 218 F.3d 78, 83 (1st Cir.2000). As such, EMTALA complements but does not displace or substitute traditional state-law tort remedies for medical malpractice. *See, Id.* at 83, 84 ("EMTALA is a limited 'anti-dumping' statute, not a federal malpractice statute"; EMTALA "designed to complement and not incorporate state malpractice law") (citations omitted); *Correa,* 69 F.3d at 1192 ("EMTALA does not create a cause of action for medical malpractice") (citations omitted).

Insofar as concerns us here, EMTALA is comprised of two key requirements imposed on hospitals with emergency rooms: (1) that, once a patient arrives at their doorstep requiring treatment or examination, the emergency room provide a medical screening examination of that patient that is adequate within the particular emergency room's capabilities, and (2) that if an emergency medical condition is determined to exist, the patient be stabilized prior to discharge or transfer to another facility. *See, Guadalupe v. Negrón–Agosto,* 299 F.3d 15, 19 (1st Cir.2002) ("By its terms, EMTALA is designed to assure that any person visiting a covered hospital's emergency room is screened for an emergency medical condition and is stabilized if such condition exists"); *Reynolds,* 218 F.3d at 83 ("at a minimum Congress manifested an intent that all patients be treated fairly"). The relevant provisions may be found at 42 U.S.C. § 1395dd(a) and § 1395dd(b). Subsection (a) deals with the screening requirement and provides that

if any individual ... comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition ... exists.

Subsection (b), in turn, deals with the stabilization requirement and prescribes that

[i]f any individual ... comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either—

(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or

(B) for transfer of the individual to another medical facility in accordance with [the statute].

A plaintiff may assert causes of action under either the screening or stabilization provisions of EMTALA, or both. Regardless of the plaintiff's choice as to how to proceed, under one provision, the other, or both, in order to prevail on her EMTALA claim, she must show that:

(1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent treatment facility); (2) the patient arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently transferring her) without first stabilizing the emergency medical condition.

*Correa,* 69 F.3d at 1190 (citing *Miller v. Medical Ctr. Of Southwest La.,* 22 F.3d 626, 628 (5th Cir.1994); *Stevison v. Enid*

*Health Sys., Inc.,* 920 F.2d 710, 712 (10th Cir.1990)).

Co-defendant Pavía zooms in on the third prong of an EMTALA cause of action, arguing that its screening of Mr. Valentín–Cintrón complied with EMTALA. As stated above, 42 U.S.C. § 1395dd(a) requires that a hospital provide an "appropriate medical screening examination" within the hospital's capability to any patient that arrives at its emergency room requesting treatment or examination of a medical condition. The statute does not define what constitutes an "appropriate medical screening examination". To bridge that gap, the First Circuit has stated that:

> A hospital fulfills its statutory duty to screen patients in its emergency room if it provides for a screening examination reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of screening uniformly to all those who present substantially similar complaints. [ . . . ] The essence of this requirement is that there be some screening procedure, and that it be administered even handedly.

*Correa,* 69 F.3d at 1192 (internal citations omitted).

In applying this explication of what constitutes an appropriate medical screening, the First Circuit has made clear that a plaintiff seeking to recover under EMTALA's screening provision must prove that the hospital's screening of the patient differed significantly from that provided to other patients in the same condition. *See, Reynolds,* 218 F.3d at 84 ("[plaintiffs] must proffer evidence sufficient to support a finding that [the patient] received materially different screening than that provided to others in his condition"); *see also, Colón v. Hosp. Dr. Pila,* 330 F.Supp.2d 38, 43 (D.P.R.2004) ("in claims asserting inade-quate screening, the plaintiff bears the burden of proving that in screening him or her, the hospital failed to follow the screening policy or standard of care which it regularly follows for other patients presenting substantially similar conditions") (citations and internal quotations omitted); *Sánchez Rivera v. Doctors' Center Hosp., Inc.,* 247 F.Supp.2d 90, 98 (D.P.R.2003) ("an EMTALA claim may only ensue for failure to screen in a manner comparable to others brought into the emergency room with the same conditions") (citations omitted); *Estate of Giomard Rivera v. Dr. Susoni Hosp.Inc.,* 288 F.Supp.2d 161, 163 (D.P.R.2003)(quoting *Reynolds* ); *Roa Gil v. Otero López,* 273 F.Supp.2d 180, 183–84 (D.P.R.2003) (same); *Torres Otero v. Hospital General Menonita,* 115 F.Supp.2d 253, 258–259 (D.P.R.2000) (same as *Colón, supra* ); *Fuentes Ortiz v. Mennonite General Hosp.,* 106 F.Supp.2d 327, 331 (D.P.R.2000) ("it is the plaintiff's burden to show that the Hospital treated her differently from other patients") (citations omitted); *Feighery v. York Hosp.,* 59 F.Supp.2d 96, 102–103 (D.Me.1999)("to state a claim under the EMTALA, the plaintiff must show that he or she was given a screening that was different from that afforded as a matter of course to patients presenting the same symptoms") (citations omitted). To meet this burden, "[i]t is not enough to proffer expert testimony as to what *should* have been provided to a patient in [the plaintiff's] condition." *Reynolds,* 218 F.3d at 84.

In support of its contention that Plaintiffs may not prosper in their EMTALA claim for failure to screen, Co-defendant Pavía points to Plaintiffs' expert witness's admission that the "mandatory examination [on Luis Valentín–Cintrón] was performed." *See,* Ex. 1 to Docket # 53. In an attempt to extricate themselves from the conundrum of having to dispute their

expert witness's statement, Plaintiffs assert, and back it up with evidence, that Mr. Valentín–Cintrón was essentially left unattended for several hours in the emergency room. The problem with this argument is that it does not prove that the EMTALA-required screening failed to take place. Plaintiffs' arguments and their supporting evidence tend to show that Mr. Valentín–Cintrón was not properly treated, or even treated at all. That however, is a problem separate and distinct from the issue of appropriate medical screening examinations under EMTALA, and is more properly asserted via a medical malpractice claim.

We perceive further problems with Plaintiffs' case of inappropriate screening in violation of EMTALA. For example, Plaintiffs refer to certain medical processes and remedies that they deem essential for the "appropriate screening" of an intoxicated patient, but make no effort at arguing, let alone showing, that such processes and remedies were within the emergency room's capabilities and that, in failing to afford these processes and remedies, Co-defendant Pavía failed to treat Mr. Valentín–Cintrón as it would any other patient in his condition. *See, Guadalupe*, 299 F.3d at 22 ("A claim of inappropriate medical screening based on failure to provide certain diagnostic tests must at least address whether the hospital was capable of performing such tests"; lack of evidence of differential treatment fatal to the plaintiff's case under EMTALA screening provision). Evidence of this type is key to contesting Co-defendant Pavía's assertion that the necessary examination took place and clearing the way for Plaintiffs to proceed under their failure to screen theory of EMTALA liability.

Because Plaintiffs have failed to create a genuine issue of material fact as to an essential prong of their EMTALA failure to screen claim, i.e., that Co-defendant Pavía failed to provide an appropriate medical screening examination as required by the statute, Co-defendant Pavía is entitled to summary judgment on the EMTALA claim premised on such theory of liability. However, in their opposition to summary judgment, Plaintiffs assert that Defendants also failed to stabilize Mr. Valentín–Cintrón. We construe this as an argument that Defendants infringed 42 U.S.C. § 1395dd(b). Plaintiffs made some mention of the duty to stabilize in their Second Amended Complaint (Docket # 38; *see*, ¶¶ 19, 20). As such, and although far from clear, we will read the Second Amended Complaint as pleading a cause of action under the stabilization provision of EMTALA. Since Co-defendant Pavía made no argument as to this theory of EMTALA liability, an EMTALA claim for failure to stabilize remains alive. As such, there is still a federal claim before the Court, and exercise of supplemental jurisdiction over the state law claims is proper.

### Conclusion

For the reasons set herein, Co-defendant Pavía's Motion for Summary Judgment is **GRANTED in part and DENIED in part.** The Court will enter Partial Judgment dismissing with prejudice Plaintiffs' claim of violation of EMTALA's screening provision, 42 U.S.C. § 1395dd(a). Pending remain an EMTALA-stabilization claim under subsection (b) of the statute and the supplemental law claims.

**SO ORDERED.**