Maria **BENITEZ–RODRIGUEZ,**
**et al., Plaintiffs**

v.

**HOSPITAL PAVIA HATO REY,**
**INC., et al., Defendants.**

**Civil No. 08–1630(SEC).**

United States District Court,
D. Puerto Rico.

Dec. 1, 2008.

Carlos R. Paula, San Juan, PR, Xiomara Colon–Rodriguez, Labor Counsels, Guaynabo, PR, for Plaintiffs.

Gloria M. De–Corral–Hernandez, De Corral & De Mier, Brenda L. Santana–Dieppa, Morales Morales Law Offices, Ramonita Dieppa–Gonzalez, Jose A. Miranda–Daleccio, Miranda Cardenas & Cordova, Shakira Santiago–Rivera, Quinones Tridas Law Office, PSC, Juan M. Masini–Soler, Juan Masini Soler Law Office, Sigrid Lopez–Gonzalez, Sigrid Lopez Gonza-

lez Law Offices, San Juan, PR, Michelle Taveira–Tirado, Carolina, PR, for Defendants.

## OPINION AND ORDER

SALVADOR E. CASELLAS, Senior District Judge.

Pending before the Court is Co-defendant Dr. Laura Galindez–Matos' (hereinafter "Co-defendant") Motion to Dismiss (Docket # 26). Plaintiffs have filed an opposition (Docket # 33). For the reasons set forth below, the Court shall **GRANT** Co-defendant's motion and **DISMISS** the instant action.

### Factual Background

Plaintiffs, the heirs of Mr. Juan C. Codazzi Listte (hereinafter "Codazzi"), bring the present action for alleged violations of the Emergency Medical Treatment and Active Labor Act (hereinafter "EMTALA"). Additionally, Plaintiffs asserted medical malpractice claims under Puerto Rico's general tort statute, 31 P.R. Laws Ann. § 5141, pursuant to the Court's supplemental jurisdiction. Co-defendant has moved for dismissal of the suit on *Colorado River* abstention grounds.[1] The motion to dismiss also alleges that EMTALA is inapplicable, because obligations under the statute end once a hospital admits an individual as an inpatient. *See* Docket # 26 at 7–9.

The facts of this case, as alleged in the Amended Complaint (Docket # 14), are straight forward and allow for its disposition.

On April 29, 2007, Codazzi was transferred from a clinic in Guaynabo, Puerto Rico, to the Emergency Room of Hospital Pavia Hato Rey (hereinafter "Hospital Pa-

via"), due to severe pain in his abdomen and torso area. *See* Docket # 14 at ¶¶ 19–21. After an initial diagnosis of a cardiac problem, Codazzi was given medication for a heart attack and spent the night in the Emergency Room. *See id.* at ¶¶ 26 & 28. However, Codazzi's abdominal pain continued through the night and at around 7:00 a.m. the next morning his attending physicians performed a sonogram, which led to the diagnosis of a ruptured gallbladder. *See id.* Drugs administered to Codazzi for the initial diagnosis of cardiac problems made it impossible to perform surgery on his ruptured gallbladder. *See id.* at ¶ 29. This allegedly led to sepsis and organ damage. *See id.* at ¶ 33.

The Complaint does not allege that Codazzi was ever discharged or transferred from Hospital Pavia. Instead, doctors moved him from the Emergency Room to the Intensive Care Unit. The exact date this occurred is unclear, but by the morning of May 2, 2007, Codazzi had already spent at least one night in the Intensive Care Unit, where he remained for several weeks. *See id.* at ¶¶ 33 & 37. Eventually, after showing some improvement, on June 8th, 2007, Codazzi was removed from the Intensive Care Unit to a hospital room. *See id.* at ¶ 38 & 41–46. Codazzi died on June 9, 2007, due to complications stemming from his ruptured gallbladder. *See id.* at ¶ 51. At the time of his death, Codazzi had been an inpatient of Hospital Pavia in excess of four weeks.

### Standard of Review

#### FED.R.CIV.P. 12(B)(6)

In assessing whether dismissal for failure to state a claim is appropriate, the court must take "plaintiffs' well-pleaded facts as true and [indulge] all reasonable

---

1. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

inferences therefrom to their behalf." *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 32 (1st Cir.2007). "In conducting that [assessment], however, bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." *Id.* at 33; *see also Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir.1999). Therefore, "even under the liberal pleading standards of FED.R.CIV.P. 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.' " *Rodríguez–Ortíz v. Margo Caribe, Inc.*, 490 F.3d 92 (1st Cir.2007). Complaints do not need detailed factual allegations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). However, factual allegations must be enough to raise a right to relief above the speculative level. *Id.*

### Applicable Law and Analysis

■ EMTALA is the result of Congressional concern about reports that hospital emergency rooms, driven by profit and not public service, were refusing to accept or treat patients with emergency medical conditions that lacked medical insurance. *See Correa v. Hospital San Francisco*, 69 F.3d 1184, 1189 (1st Cir.1995) (citing the legislative record of EMTALA). In order to deter this practice, referred to colloquially as "dumping," Congress enacted EMTALA, which "created a remedy for patients in certain contexts in which a claim under state medical malpractice law was not available." *Reynolds v. MaineGen. Health*, 218 F.3d 78, 83 (1st Cir.2000). As such, EMTALA complements but in no way displaces or substitutes traditional state-law tort remedies for medical malpractice. *See id.* at 83–84 ("EMTALA is a limited 'anti-dumping' statute, not a federal malpractice statute"; EMTALA is "designed to complement and not incorporate state malpractice law") (citations omitted);

*Correa*, 69 F.3d at 1192 ("EMTALA does not create a cause of action for medical malpractice.") (citations omitted).

■ Insofar as concerns the case at bar, EMTALA is comprised of two key requirements imposed on hospitals with emergency rooms: (1) that, once a patient arrives at their doorstep requiring treatment or examination, the emergency room provide a medical screening examination of that patient that is adequate within the particular emergency room's capabilities, and (2) that if an emergency medical condition is determined to exist, the patient be stabilized prior to discharge or transfer to another facility. *See Guadalupe v. Negrón–Agosto*, 299 F.3d 15, 19 (1st Cir.2002) ("By its terms, EMTALA is designed to assure that any person visiting a covered hospital's emergency room is screened for an emergency medical condition and is stabilized if such condition exists"); *Reynolds*, 218 F.3d at 83 ("at a minimum Congress manifested an intent that all patients be treated fairly"). The relevant provisions are 42 U.S.C. § 1395dd(a) and § 1395dd(b). Subsection (a) addresses the screening requirement and provides that:

> [I]f any individual ... comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition ... exists.

Subsection (b), in turn, deals with the stabilization requirement and prescribes that:

> [I]f any individual ... comes to a hospital and the hospital determines that the individual has an emergency medical

condition, the hospital must provide either—

(A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or

(B) for transfer of the individual to another medical facility in accordance with [the statute].

■ A plaintiff may assert causes of action under either the screening or stabilization provisions of EMTALA, or both. Regardless of the plaintiff's choice as to how to proceed, under one provision, the other, or both, in order to prevail on her EMTALA claim, he or she must show that:

(1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent treatment facility); (2) the patient arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently transferring her) without first stabilizing the emergency medical condition.

*Correa,* 69 F.3d at 1190 (citing *Miller v. Med. Ctr. of S.W. La.,* 22 F.3d 626, 628 (5th Cir.1994)); *Stevison v. Enid Health Sys., Inc.,* 920 F.2d 710, 712 (10th Cir. 1990).

*Stabilization—42 U.S.C. § 1395dd(b)*

In the present matter, Plaintiffs allege the stabilization requirement was violated because Codazzi was given treatment for cardiac symptoms, and not immediately treated for his ruptured gallbladder. The Court notes that *Lopez–Soto v. Hawayek,* 175 F.3d 170, 174 (1st Cir.1999), concluded that EMTALA attaches when a patient is transferred without passing through the emergency room. However, *Lopez–Soto* did not specifically address a situation where a patient was admitted to the defendant hospital after entering the emergency room. The plaintiff in *Lopez–Soto* was transferred out of the hospital, thus triggering 42 U.S.C.A. § 1395dd(b)(1)(B) protection. *Id.* at 171.

■ With regards to stabilization, EMTALA prohibits transfer or discharge before a patient's condition is stabilized. *Correa,* 69 F.3d at 1190. It is important to remember that EMTALA is an anti-dumping act, designed to evaluate whether or not a hospital has given proper medical treatment to a patient that it has transferred or released. *Id.* at 1189; *Sanchez Rivera v. Doctors Ctr. Hosp., Inc.,* 247 F.Supp.2d 90, 98 & 105 (D.P.R.2003). In the present case, Codazzi remained under Hospital Pavia's care for over a month.

Various Circuits have determined that EMTALA's stabilization requirement is not applicable in situations where an individual is admitted to the hospital for further treatment. *See, e.g., Harry v. Marchant,* 291 F.3d 767, 772 (11th Cir.2002) ("To give effect to the clear language of the statute, we must conclude the triggering mechanism for stabilization treatment under EMTALA is transfer."); *Bryant v. Adventist Health Sys./W.,* 289 F.3d 1162, 1168–1169 (9th Cir.2002); *Bryan v. Rectors and Visitors of Univ. of Virginia,* 95 F.3d 349, 352 (4th Cir.1996). Adding strength to this interpretation is *Fraticelli–Torres v. Hospital Hermanos,* No. 07–2397, 300 Fed.Appx. 1, 3, 2008 WL 4880622 (1st Cir. Nov. 13, 2008), which recently cited the *Harry* standard. Furthermore, the Code of Federal Regulations reiterates the transfer requirement provision of 42 U.S.C.A. § 1395dd(b), stating:

If an emergency medical condition is determined to exist, [the hospital must] provide any necessary stabilizing treatment, as defined in paragraph (d) of this section, or an appropriate transfer as defined in paragraph (e) of this section. *If the hospital admits the individual as an inpatient for further treatment, the hospital's obligation under this section ends ...*

42 C.F.R. § 489.24(a)(ii)(emphasis added).

This Court agrees that in light of the aforementioned provision, *Harry* correctly interprets 42 U.S.C. § 1395dd(b). Therefore, the EMTALA stabilization requirement cannot be met in the case at bar, because Codazzi was admitted as a patient, and thus, never dumped, transferred, or discharged. As such, we believe *Lopez–Soto* should be read narrowly to apply to situations where patients with emergency medical conditions are transferred from one hospital to another.

■ In the case at bar, Codazzi was moved from the Emergency Room of Hospital Pavia to the Intensive Care unit of the same hospital, thus precluding any claim under 42 U.S.C.A. § 1395dd(b)(1)(B). Furthermore, only after Codazzi's condition was identified and stabilized, as demonstrated by Plaintiffs' own admissions, was he moved to the Intensive Care Unit. Thus, even without the Court's incorporation of *Harry*, Plaintiffs' pleadings confirm that Defendant complied with 42 U.S.C.A. § 1395dd(b)(1)(A). *See* Docket # 14 at ¶ 38.

Where the claim is based on a response to the wrong emergency condition, but no transfer or discharge occurs, EMTALA's stabilization requirement should not apply. That is precisely the situation in the case at bar. Far from dumping or transferring Codazzi, Hospital Pavia offered him treatment for over a month. Whether or not said treatment was deficient or adminis-

tered negligently is not a controversy covered under EMTALA.

*Screening—42 U.S.C. § 1395dd(a)*

■ In terms of their EMTALA screening claims, Plaintiffs allege that the hospital failed to provide an adequate screening, given the totality of the circumstances, therefore leading to the initial diagnosis of cardiac problems when Codazzi's actual affliction was a ruptured gallbladder. The law requires an appropriate medical screening examination that is "reasonably calculated to identify critical medical conditions ..." *Guadalupe*, 299 F.3d at 20. Hospitals are not liable under EMTALA's screening provisions where an individual cannot prove that the hospital failed to treat the patient as it would any other patient in his or her condition. *Cintron v. Pavia Hato Rey Hosp.*, 492 F.Supp.2d 29, 35 (D.P.R.2007); *Correa*, 69 F.3d at 1192 (1st Cir.1995) ("The essence of this requirement is that there be some screening, and that it be administered evenhandedly."); *see also Guadalupe*, 299 F.3d at 19; *Fraticelli–Torres*, No. 07–2397, 300 Fed.Appx. at 4, 2008 WL 4880622. According to the Amended Complaint (Docket # 14), Hospital Pavia's doctors performed a screening, which led to an initial diagnosis. Further tests, given as a result of said screening and Codazzi's continued symptoms, led the doctors to change their diagnosis. This in no way suggests that Hospital Pavia failed to screen Codazzi in a manner reasonably calculated to identify his condition. Instead, the eventual correction of Codazzi's diagnosis shows that the hospital's screening procedure was effective. While Hospital Pavia's doctors may have erred in their initial diagnosis, this does not fall under the sphere of EMTALA.

Moreover, this Court believes that the logic used by the 11th Circuit in the *Harry*

decision, stating that admission precludes a stabilization claim, should also to apply to the screening process. It would border on the absurd to conclude that a hospital that has provided extensive emergency and inpatient care to an individual, failed to screen him or her as it would any other patient in his or her condition. Codazzi was not indigent or uninsured, nor did the hospital deny him care.

In the case at bar, Hospital Pavia provided an initial examination, and administered Codazzi with medication according to the Emergency Room physician's initial diagnosis. *See* Docket # 14 at ¶ ¶ 24–26. Plaintiffs have not alleged that Hospital Pavia treated Codazzi differently than other patients with similar symptoms. Where no allegations of disparate treatment have been made, no action exists under the screening requirements of EMTALA. *Guadalupe*, 299 F.3d at 20. As the Court has already mentioned, the facts of the Amended Complaint do not suggest that Hospital Pavia failed to screen Codazzi. Whether or not Hospital Pavia's doctors made an incorrect initial diagnosis is irrelevant with regards to EMTALA's applicability. What is apparent from the complaint is that Codazzi was screened, treated, and admitted to Hospital Pavia. Under these circumstances, EMTALA simply does not apply; to do so would extend the law to all hospital malpractice connected to patients admitted through emergency rooms.

### Conclusion

In light of the facts presented throughout the Amended Complaint, Plaintiffs' claim of inadequate screening is merely speculative, and the claim of failure to stabilize is inapplicable where a patient has been admitted for further care. These allegations on their face constitute allegations of medical malpractice, which is not covered under EMTALA.

Accordingly, the court shall dismiss the EMTALA claims under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. After finding EMTALA inapplicable, the Court has no jurisdiction to entertain the remaining state law claims where no diversity jurisdiction exists. As the Court has found that dismissal must proceed due to Plaintiffs' failure to present a viable EMTALA claim, there is no need to attend Co-defendant's request for a *Colorado River* abstention. Plaintiffs are not without remedy in this matter, as today's decision in no way affects their pending state court medical malpractice action.

For the reasons set herein, Co-defendant's Motion to Dismiss is **GRANTED**. The Court will enter Judgment **DISMISSING WITH PREJUDICE** Plaintiffs' EMTALA claims, and **DISMISSING WITHOUT PREJUDICE** Plaintiffs' supplemental state law claims.

**SO ORDERED.**