**Angel Alvarado RIVERA, et al., Plaintiffs,**

**v.**

**HOSPITAL EPISCOPAL CRISTO REDENTOR, et al., Defendants.**

**Civil No. 08–1349 (DRD).**

United States District Court, D. Puerto Rico.

March 26, 2009.

Arnaldo Rivera–Seda, Cruz, Rivera & Alvarez Westwood Law Office, Ponce, PR, for Plaintiffs.

Ramonita Dieppa–Gonzalez, San Juan, PR, Jose H. Vivas, Vivas & Vivas, Ponce, PR, for Defendants.

### OPINION AND ORDER

DANIEL R. DOMINGUEZ, District Judge.

Before the Court are Defendants', Dr. Robert Muns Sosa and Hospital Episcopal Cristo Redentor, Inc. (hereinafter "Co-defendants") Motions to Dismiss. (Docket No. 10 and 17) Plaintiffs have filed oppositions in response to Defendants' Motions to Dismiss. (Docket No. 13 and 20). For the reasons set forth below, the Court GRANTS Co-defendants' motions and DISMISSES the instant federal action.

Plaintiffs bring the present action for alleged violations of the Emergency Medical Treatment and Active Labor Act (hereinafter "EMTALA"). Additionally, Plaintiffs assert medical malpractice claims under Puerto Rico's general tort statute, 31 P.R. Laws Ann. § 5141, pursuant to the Court's supplemental jurisdiction.

Co-defendants' motions to dismiss state that EMTALA is inapplicable, because obligations under the statute end once a hospital admits an individual as an inpatient. See Docket No. 10, pgs. 4–6 and Docket No. 17, pgs. 2–3.

### I. Factual Background

On March 24, 2007 Plaintiff, Nagelly De Jesus Cora, who was twenty nine (29) weeks pregnant, went to the emergency ward of Hospital Episcopal Cristo Redentor in Guayama, Puerto Rico, complaining of pelvic pain. After being treated by the Triage nurse, Plaintiff was evaluated by co-defendant, Dr. Muns Sosa, who documented the history of the patient. Co-defendant's impression diagnosis was pelvic pain.

After the initial evaluation and screening, co-defendant, Dr. Muns Sosa ordered some tests to be performed. Plaintiff was kept at the emergency ward until she was admitted to the ante partum ward by orders of her obstetrician and also by co-defendant, Dr. Jaime Busquet Pesquera.

Plaintiff was later admitted to the labor room with uterine contractions where her baby was born through natural birth. Unfortunately, Plaintiff's newborn baby had trouble breathing and was therefore placed in a mechanical ventilator. On March 25th, 2007, Plaintiff's baby became cyanotic with chest retractions and poor respira-

tory effort. Although Advanced Pediatric Life Support Cardiopulmonary Measures were provided to Plaintiff's baby, the treatment was unsuccessful.

Plaintiff's baby died on March 25, 2007 at 1:55 a.m., at the Hospital Episcopal Cristo Redentor in Guayama. On March 26, 2007 Plaintiff was discharged from the Hospital.

## II. Standard of Review Fed.R.Civ.P. 12(b)(6)

█ Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed.R.Civ.P.") provides that a complaint will be dismissed for "failure to state a claim upon which relief can be granted." "So, when the allegations in a complaint, however true, fall short of a claim of entitlement to relief, 'this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court.'" (citations omitted). *Bell Atlantic Corporation, et al. v. Twombly, et al.,* 550 U.S. 544, 127 S.Ct. 1955, 1966, 167 L.Ed.2d 929 (2007). In *Twombly,* 127 S.Ct. at 1965 and 1974, the Court held:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... (citations omitted) ... a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions not do, *see Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). **Factual allegations must be enough to raise a right to relief above the speculative level,** *see* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235–236 (3d ed. 2004).
>
> . . .

Here, in contrast, we do not require heightened fact pleading of specifics, **but only enough facts to state a claim to relief that is plausible on its face.** Because the plaintiffs here have not nudged their claims across the line from **conceivable to plausible,** their complaint must be dismissed. (Emphasis ours).

*See also Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) ("Specific facts are not necessary; the **statements need only 'give the defendants fair notice of what the ... claim is and the grounds upon which it rests'** ") (quoting *Twombly,* 127 S.Ct. at 1964) (emphasis ours); *Thomas v. Rhode Island,* 542 F.3d 944, 948, n. 4 (1st Cir. 2008) (the motion to dismiss standard followed in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) "no longer governs in light of *Twombly* ") (quoting *Twombly,* 127 S.Ct. at 1964; *Rodríguez–Ortiz v. Margo Caribe, Inc.,* 490 F.3d 92, 95–96 (1st Cir.2007)) (citing *Twombly* ); and *Torres v. Bella Vista Hospital, Inc.,* 523 F.Supp.2d 123, 133 (D.P.R. 2007) (quoting *Twombly,* 127 S.Ct. at 1974). Thus, the new standard under *Twombly* is that a claim for relief must contain allegations that "are plausible on its face."

█ A district court's dismissal of a claim under Fed.R.Civ.P. 12(b)(6) is reviewed *de novo* by the Court of Appeals. *Thomas v. Rhode Island,* 542 F.3d 944 (1st Cir.2008). "In doing so, we must assume the truth of all well-pleaded facts and give the plaintiff the benefit of all reasonable inferences therefrom." *Thomas,* 542 F.3d 944, 948 (citing *Clark v. Boscher,* 514 F.3d 107, 112 (1st Cir.2008)).

## III. ANALYSIS

### A. EMTALA Claim

█ In 1986, Congress adopted EMTALA to address the problems created by the

refusal of hospital emergency rooms to treat patients who did not carry adequate medical insurance. *See Reynolds v. MaineGeneral Health*, 218 F.3d 78, 83 (1st Cir. 2000). Uninsured patients have a remedy against a hospital pursuant to EMTALA in certain situations where a state malpractice claim is not available. *See Id.; see also* 42 U.S.C. § 1395dd(d)(2)(A). EMTALA includes two key provisions: 1) hospitals must provide appropriate screening to emergency room patients to determine whether an emergency medical condition exists; and 2) hospitals must provide services necessary to stabilize the patient's condition before releasing him/her. *See Correa v. Hosp. San Francisco*, 69 F.3d 1184, 1190 (1st Cir.1995). As cited in *Morales v. Sociedad Española de Auxilio Mutuo y Beneficencia*, 524 F.3d 54, 57–58 (1st Cir.2008) *cert. denied* — U.S. ——, 129 S.Ct. 898, 173 L.Ed.2d 107 (2009),

[f]irst, "if any individual ... comes to the emergency department [of a covered hospital] and a request is made on the individual's behalf for examination or treatment for a medical condition, the hospital must provide for an appropriate medical screening examination." *Id.* § 1395dd(a). Second, if the screening examination discloses that the individual suffers from an emergency medical condition, the hospital must provide necessary stabilization. *See id.* § 1395dd(b)(1).

■ EMTALA, however, is not a federal malpractice statute. On the contrary, courts have consistently held that "EMTALA does not create a cause of action for federal medical malpractice." *Correa*, 69 F.3d at 1192 (citation omitted); *see also Summers v. Baptist Med. Ctr. Arkadelphia*, 91 F.3d 1132, 1137 (8th Cir.1996) ("So far as we can tell, every court that has considered EMTALA has disclaimed any notion that it creates a general federal cause of action for medical malpractice in emergency rooms."); *see also Reynolds v. MaineGeneral Health*, 218 F.3d 78, 83–84 (1st Cir.2000)(Standing for the proposition that EMTALA was not intended to supplant existing medical malpractice state-law with a federal malpractice standard. The required minimal screening and stabilization were to be solely established to prevent the then existing policy of patient dumping which the state malpractice could not redress.)

■ EMTALA is therefor the result of Congressional concern about reports that hospital emergency rooms, driven by profit and not public service, were refusing to accept or treat patients with emergency medical conditions that lacked medical insurance. *See Correa v. Hospital San Francisco*, 69 F.3d 1184, 1189 (citing the legislative history of EMTALA). In order to deter this practice, referred to colloquially as "dumping," Congress enacted EMTALA, which "created a remedy for patients in certain contexts in which a claim under state medical malpractice law was not available." *Reynolds*, 218 F.3d at 83. As such, EMTALA complements but in no way displaces or substitutes traditional state-law tort remedies for medical malpractice. *See Id.* at 83–84 ("EMTALA is a limited 'anti-dumping' statute, not a federal malpractice statute"; EMTALA is "designed to complement and not incorporate state malpractice law") (citations omitted); *Correa*, 69 F.3d at 1192 ("EMTALA does not create a cause of action for medical malpractice.") (citations omitted).

Insofar as concerns the instant case, EMTALA is comprised of two key requirements imposed on hospitals with emergency rooms: (1) that, once a patient arrives at their doorstep requiring treatment or examination, the emergency room provides a medical screening examination of that patient that is adequate within the particu-

lar emergency room's capabilities, and (2) that if an emergency medical condition is determined to exist, the patient be stabilized prior to discharge or transfer to another facility. *See Guadalupe v. Negrón Agosto*, 299 F.3d 15, 19 (1st Cir.2002) ("By its terms, EMTALA is designed to assure that any person visiting a covered hospital's emergency room is screened for an emergency medical condition and is stabilized if such condition exists"); *Reynolds*, 218 F.3d at 83 ("at a minimum Congress manifested an intent that all patients be treated fairly"). The relevant provisions are 42 U.S.C. § 1395dd(a) and § 1395dd(b). Subsection (a) addresses the screening requirement and provides that:

> [I]f any individual ... comes to the emergency department and a request is made on the individual's behalf for examination or treatment for a medical condition, **the hospital must provide an appropriate medical screening examination within the capability of the hospital's emergency department, including ancillary services routinely available to the emergency department, to determine whether or not an emergency medical condition ...** exists.

Subsection (b), in turn, deals with the stabilization requirement and prescribes that:

> [I]f any individual ... comes to a hospital and the hospital determines that the individual has an emergency medical condition, the hospital must provide either—
>
> (A) within the staff and facilities available at the hospital, for such further medical examination and such treatment as may be required to stabilize the medical condition, or
>
> (B) for transfer of the individual to another medical facility in accordance with [the statute]. (Emphasis ours).

A plaintiff may assert causes of action under either the screening or stabilization provisions of EMTALA, or both. Regardless of the plaintiff's choice as to how to proceed, under one provision, the other, or both, in order to prevail on her EMTALA claim, she must show that:

> (1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department (or an equivalent treatment facility); (2) the patient arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or
>
> (b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently transferring her) without first stabilizing the emergency medical condition.

*Correa*, 69 F.3d at 1190 (citing *Miller v. Med. Ctr. of S.W. La.*, 22 F.3d 626, 628 (5th Cir.1994)); *Stevison v. Enid Health Sys., Inc.*, 920 F.2d 710, 712 (10th Cir. 1990).

### 1. Screening–42 U.S.C. § 1395dd(a)

In this case, Plaintiffs allege that the screening requirement was violated because Co-defendants failed to perform an appropriate screening, therefore leading to the initial diagnosis of pelvic pain, when De Jesus Cora's actual affliction was that she was on Active Labor. The law requires an appropriate medical screening examination that is "reasonably calculated to identify critical medical conditions ..." *Guadalupe*, 299 F.3d at 20. Hospitals are not liable under EMTALA's screening provisions where an individual cannot prove that the hospital failed to treat the patient as it would any other patient in his or her condition. *See Cintron v. Pavia Hato Rey Hosp.*, 492 F.Supp.2d 29, 35 (D.P.R.2007); *see also*

*Correa,* 69 F.3d at 1192 (1st Cir.1995)("The essence of this requirement is that there be some screening, and that it be administered evenhandedly."); *see also Guadalupe,* 299 F.3d at 19; *see also Fraticelli–Torres v. Hospital Hermanos,* 300 Fed. Appx. 1 (1st Cir.2008).

▮▮ According to the Complaint (Docket No. 1), Co-defendants performed a screening, which led to an initial diagnosis. Further tests, given as a result of said screening and Plaintiff's continued symptoms, led the doctors to change their diagnosis. This in no way suggests that Co-defendants failed to screen Plaintiff in a manner reasonably calculated to identify her condition. Instead, the eventual correction of Plaintiffs' diagnosis shows that the hospital's screening procedure was effective. While Co-defendant's doctors may have erred in their initial diagnosis, this clearly does not fall under the sphere of EMTALA. A misdiagnosis or screening as opposed to no screening, does not create a cause for EMTALA but a cause under state malpractice law as set forth in *Correa v. Hosp. San Francisco,* 69 F.3d at 1194, citing *Nichols v. Estabrook,* 741 F.Supp. 325 (D.N.H.1989).

## 2. Stabilization–42 U.S.C. § 1395dd(b)

Plaintiffs' further argue that if Co-defendants had used all available ancillary resources during the stabilization process, the new born baby would have had a higher chance of survival. The Court notes that in *Lopez–Soto v. Hawayek,* 175 F.3d 170, 174 (1st Cir.1999), the First Circuit concluded that EMTALA protections apply when a patient is transferred without passing through the emergency room. However, Lopez–Soto did not specifically address a situation where a patient was admitted to the defendant hospital after entering the emergency room. The plaintiff in *Lopez–Soto* was transferred out of the hospital, thus triggering EMTALA, 42 U.S.C.A. § 1395dd(b)(1)(B) protection. See *Id.* at 171.

▮▮ With regards to stabilization, EMTALA prohibits the transfer or discharge before a patient's condition is stabilized. *Correa,* 69 F.3d at 1190. In the instant case, Plaintiffs seem to ignore that Co-defendants did in fact provide emergency treatment to stabilize the patient and that Plaintiff was even admitted to the labor room where she gave birth to her baby.

Various Circuits Courts have determined that EMTALA's stabilization requirement is not applicable in situations where an individual is admitted to the hospital for further treatment. *See, e.g., Harry v. Marchant,* 291 F.3d 767, 772 (11th Cir.2002) ("To give effect to the clear language of the statute, we must conclude the triggering mechanism for stabilization treatment under EMTALA is transfer."); *see also Bryant v. Adventist Health Sys. /W.,* 289 F.3d 1162, 1168–1169 (9th Cir. 2002); *Bryan v. Rectors and Visitors of Univ. of Virginia,* 95 F.3d 349, 352 (4th Cir.1996). Adding strength to this interpretation is *Fraticelli–Torres,* 300 Fed. Appx. 1 (C.A.1 (Puerto Rico 2008)), which recently cited the standard held by the Eleventh Circuit in *Harry v. Marchant.* Furthermore, the Code of Federal Regulations reiterates the transfer requirement provision of 42 U.S.C.A. § 1395dd(b), stating:

> If an emergency medical condition is determined to exist, [the hospital must] provide any necessary stabilizing treatment, as defined in paragraph (d) of this section, or an appropriate transfer as defined in paragraph (e) of this section. **If the hospital admits the individual as an inpatient for further treatment,**

the hospital's obligation under this section ends ...

42 C.F.R. § 489.24(a)(ii)(emphasis added).

In light of the aforementioned provision, this Court concludes that the *Harry* doctrine cited in *Fraticelli–Torres, id.,* correctly interpreted 42 U.S.C. § 1395dd(b). Therefore, the EMTALA stabilization requirement cannot be met in the present case because Plaintiff, De Jesus Cora was admitted as a patient, and thus, was never dumped, transferred, or discharged without having stabilized her emergency medical condition. Furthermore, this Court recognizes pursuant to the allegations that Plaintiff was discharged from medical care on March 26, 2007 after being screened and stabilized. The Court also concludes that *Lopez–Soto* is to be read narrowly to apply to situations where patients with emergency medical conditions are transferred from one hospital to another without being screened and/or stabilized.

In this case pursuant to the allegations, Plaintiff was admitted to the Emergency Room of Hospital Episcopal Cristo Redentor, then she was admitted to the ante partum ward of the same hospital and later taken to the labor room. Furthermore, after giving birth Plaintiff was placed in the recovery room, thus precluding any claim under 42 U.S.C.A. § 1395dd(b)(1)(B).

The record is clear that, only after Plaintiff's condition was identified and stabilized, as demonstrated by Plaintiffs' own allegations, was she then admitted to the ante partum ward, and later placed in the recovery room. Thus, even without the Court's incorporation of *Harry*, Plaintiffs' pleadings confirm that Co-defendants complied with 42 U.S.C.A. § 1395dd(b)(1)(A). A misdiagnosis relating to hospitalization as relating to screening constitutes by analogy not an EMTALA violation but a potential malpractice claim under state law. *See Nichols v. Estabrook,* 741 F.Supp. 325.

**B. Supplemental Jurisdiction–State Law Claims**

 Federal jurisdiction exists when a well-pleaded complaint necessarily "requires the resolution of a substantial question of federal law." *Franchise Tax Bd.. v. Construction Laborers Vacation Trust for Southern California,* 463 U.S. 1, 13, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 164, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997).

 In essence, Federal Courts by their very nature are courts of limited jurisdiction. *See Exxon Mobil Corp. v. Allapattah Servs.,* 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994)). The presumption is that a federal court lacks jurisdiction. *Kokkonen,* 511 U.S. at 377, 114 S.Ct. 1673. Consequently, the burden is on the plaintiff who claims jurisdiction to affirmatively allege and prove jurisdiction. Id. To bring a civil action within the court's subject matter jurisdiction, a plaintiff must allege that his action involves either a federal question or diversity jurisdiction. See 28 U.S.C. §§ 1331 & 1332.

 In this case, it is clear that there is no diversity between the parties. Nonetheless since Plaintiffs claim is brought pursuant to the Emergency Medical Treatment and Active Labor Act, the Court has federal question jurisdiction. Furthermore, once federal jurisdiction is determined, the Court may exercise supplemental or pendant jurisdiction on a state law claim, provided that it is part of the same case or controversy of the federal question before this Court. *See* 28 U.S.C. § 1367(a)

(allowing a court to exercise supplemental jurisdiction over state law claims that are "so related to the claims in the action within the original jurisdiction that they form part of the same case or controversy"); *see also United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

However, the dismissal of a plaintiff's federal claim at the early stages of a suit, well before the commencement of trial, triggers the dismissal without prejudice of any supplemental state-law claims. *See Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130; *see also Martinez v. Colon,* 54 F.3d 980, 990 (1st Cir.1995)(affirming dismissal without prejudice of pendent claims when the district court determined "far in advance of trial that no legitimate federal question existed"). Basically, if the federal claims are properly dismissed, the District Court does not abuse its discretion in declining to exercise supplemental jurisdiction over the state-law claims asserted in the case. *See Ramos–Piñero v. Puerto Rico,* 453 F.3d 48, 55 (1st Cir.2006).

In this case, the federal claims have been properly dismissed well before the commencement of trial. *See Rodríguez v. Doral Mortgage Corp.,* 57 F.3d 1168, 1175 (1st Cir.1995). Therefore, the Court will exercise its discretion and decline Supplemental Jurisdiction over the state-law claim asserted under Article 1802 and 1803 of the Civil Code of Puerto Rico.

## IV. Conclusion

This Court harbors no doubt that the facts of the Complaint do not suggest that Co-defendants failed to screen or stabilized Plaintiff. Whether or not Co-defendants made an incorrect initial diagnosis or a mis-diagnosis as to later stabilization at the hospital constituting or not a potential medical malpractice claim under local law is irrelevant as to EMTALA's applicability. What is apparent from the Complaint is that Plaintiff, De Jesus Cora was screened, treated, and admitted to Hospital Episcopal Cristo Redentor. Under the above factual scenario and under the allegations of the instant complaint, EMTALA simply does not apply; to do so would over extend the law to potentially all hospital malpractice connected to patients admitted through emergency rooms.

In sum, the Court finds Plaintiffs' claim of inadequate screening, to be merely speculative. Moreover, the claim of failure to stabilize is inapplicable where a patient has been admitted for further care. The allegations of the complaint on their face constitute allegations of medical malpractice under Puerto Rican Law, which are not under EMTALA stricture coverage.

Accordingly, the court hereby dismisses Plaintiffs federal claim under EMTALA for failure to state a claim upon which relief can be granted. After finding EMTALA inapplicable, the Court determines under our discretion taken early in this case not to exercise its supplemental jurisdiction, and therefore shall not entertain the remaining state law claims. *Rodríguez,* 57 F.3d. at 1175. Plaintiffs are not without remedy in this matter, as the Court's decision in no way affects the filing of a state court medical malpractice action. We of course hint no resolution as to the merits of the cause of action under state law.

**IT IS SO ORDERED.**